**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY Z. EMMANOUIL, ET AL., : | |
| : | |
| Plaintiffs, : | |
| : | |
| v. : | |
| : | |
| VINCENT V. ROGGIO, ET AL., : | |
| : | |
| Defendants. : | Civ. No. 06-1068 (GEB) |
| : | Civ. No. 11-1171 (GEB) |
| VINCENT ROGGIO, : | |
| : | **MEMORANDUM OPINION** |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| ANTHONY Z. EMMANOUIL, ET AL., : | |
| : | |
| Defendants. : | |

**BROWN, Chief Judge**

This memorandum opinion addresses the parties' following post-trial filings in Civ. No. 06-1068 (hereinafter the "'06 Case"): (1) the motion of Anthony Z. Emmanouil, Eugenia Emmanouil, and West Belt Auto Supply, Inc. ("West Belt") (hereinafter collectively the "Emmanouils") for attorney's fees and costs, as well as prejudgment interest (Doc. No. 248); and (2) the motion of Vincent Roggio ("Roggio") for judgment as a matter of law or a new trial, and

1

a stay of judgment execution (Doc. No. 302).[1] This memorandum opinion also addresses the complaint filed by Roggio against the Emmanouils on October 13, 2010, in the Southern District of Texas, Houston Division, that was transferred to this Court on March 2, 2011, and gives rise to Civ. No. 11-1171 (GEB) (hereinafter the "'11 Case"). The Court has considered the parties' various submissions without oral argument pursuant to Federal Rule of Civil Procedure 78. Having done so, and for the following reasons: (1) Roggio's motion for a directed verdict or a new trial, and a stay of judgment execution will be denied (Doc. No. 302); (2) the Emmanouils' motion for attorney's fees and costs, as well as prejudgment interest, will be granted (Doc. No. 248); and (3) the Court will *sua sponte* dismiss Roggio's complaint in the '11 Case with prejudice, and order the '11 Case closed. (11-1171: Doc. No. 1)

**I.    BACKGROUND**

On September 3, 2010, after more than four years of contentious litigation that culminated in a two-week trial, the jury found by a preponderance of the credible evidence presented that: (1) Roggio breached his fiduciary duty to the Emmanouils; (2) Roggio breached his contract with Anthony Emmanouil for the sale of West Belt; (3) Roggio breached his mortgage contract with Anthony Emmanouil under which Roggio was to repay $850,000; (4) Roggio was unjustly enriched by his retention of the Emmanouils' money; and (5) Roggio failed to prove any of his various counterclaims against the Emmanouils. (Jury Verdict Sheet: Doc. No. 274) As a remedy, the jury awarded the Emmanouils $1,222,311 in compensatory damages. (*Id.*) The Court entered the parties' stipulated form of judgment against Roggio on September

---

[1] Throughout this memorandum opinion, the Court will not apply the labels "Plaintiff" or "Defendant" to the parties in light of their various counterclaims. Further, all docket citations are to Civ. No. 06-1068 (GEB) unless otherwise noted.

30, 2011.  (Doc. No. 293)

       The jury's verdict and the Court's judgment, however, did not conclude this matter in this Court.  On September 10, 2011, the Emmanouil's filed a motion for attorney's fees and costs based upon a clause in the mortgage note at issue, and for prejudgment interest.  (Doc. No. 248)  Roggio opposed that motion, and in addition, filed a motion that seeks either a directed verdict or a new trial, and a stay of judgment execution.  (Docs. No. 300, 302)  The Emmanouils oppose that motion.  (Doc. No. 310)  Finally, on March 2, 2011, the Clerk of the Court opened the '11 Case to facilitate the transfer of the case Roggio initiated on October 13, 2010, in the Southern District of Texas, Houston Division, when he filed a new complaint (the "'11 Complaint") against the Emmanouils in that court.  (11-1171: Doc. No. 1)  The '11 Complaint, which was filed more than a month after the jury's September 3, 2010 verdict in the '06 Case, appears to arise out of the same set of transactions and occurrences that have been litigated in the '06 Case for more than half a decade.  (*Id.*)  On March 14, 2010, the Court received a letter from Roggio's counsel that suggested, among other things, that the Court consolidate the '11 Case into the '06 Case.  (Doc. No. 321)  Finally, on March 31, 2011, the Emmanouils' filed a motion to dismiss the '11 Case.  (Doc. No. 32)

       As noted, the Court has considered all of the parties' submissions related to the foregoing matters.

## II.    DISCUSSION

### A. Roggio's Post-Trial Motion

       In his October 29, 2010 post-trial motion, Roggio argues that he should be granted: (1) judgment as a matter of law pursuant to Fed. R. Civ. P. 50, or a new trial pursuant to Fed. R. Civ.

3

P. 59; and (2) a stay of execution of the Court's September 30, 2010 judgment pursuant to Fed. R. Civ. P. 62. (Doc. No. 302). The Court disagrees.

First, having presided over the two-week trial in this case, the Court expresses at the outset its decided view that the jury's September 3, 2010 verdict was correct, equitable, and completely supported by the evidence presented. Thus, the Court discerns no plausible grounds upon which Roggio can seek relief pursuant to Fed. R. Civ. P. 50 or 59. That established, the Court will address each of Roggio's specific arguments for relief, and explain why none have merit.

In support of his motion pursuant to Fed. R. Civ. P. 50 and/or 59, Roggio appears to make two arguments: (1) that a directed verdict/new trial is necessary because of allegedly privileged information disclosed at trial; and (2) that West Belt was misaligned. First, as to Roggio's privilege-based arguments, the Court concludes that these are a transparent and improper attempt to re-litigate an issue that the Court has long-since decided. On July 7, 2010, the Court granted the Emmanouils' motion *in limine* to allow the testimony of Zachary Emmanouil at trial. In doing so, the Court stated the following on the record:

> [W]e have a motion seeking to permit Zachary to testify at trial. And in support of that motion, the Emmanouils argue Zachary's testimony is relevant and admissible on not less than eight separate grounds. Roggio opposes that motion, [and] argues that Zachary's testimony should be precluded as privileged attorney/client communication.
> Of the Emmanouils' basic arguments in support of the motion, they start with the assertion that Roggio has squarely placed his relevant communications with Zachary at issue in this case. The merit of that argument is not reasonably disputable. A review of Roggio's complaint, let alone the myriad briefs, certifications and exhibits submitted by Roggio during the years of motion practice in this case, clearly indicate that Roggio's dealings

>with Zachary are central, [and] at issue in this case in the claims against the Emmanouils and to his defenses against [the] Emmanouil's various claims against him.
>     Simply put, the years-long relationship between Roggio and Zachary is either the very basis or at least essential to the issues tried before the Court. As such, to disallow Zachary's testimony, as Roggio seeks to do here under the guise of attorney/client privilege, is improper. The motion to permit Zachary to testify at trial regarding all relevant communications with Roggio will therefore be granted.
>     I note that there is no motion to seek to have him testify as to anything else which might implicate any privilege, but to try to use that privilege as a sword rather than the shield, even assuming that there was attorney/client relationship, which seems to be disputed here, would not be allowed.

(Tr. Hr'g. 7/7/10, pp. 5, 6: Doc. No. 254) The Court's July 7, 2010 ruling speaks for itself, and neither the testimony adduced at trial, nor any of Roggio's present arguments persuades the Court that it should be revisited. In fact, the contrary is true. Following trial, the Court remains convinced that an application of the attorney/client privilege in this case would effectively grant Roggio "a license to lie". That result would run directly contrary to both the purpose and spirit of the attorney/client privilege, and frankly, erode the bedrock upon which the federal courts are built – justice through truth. As such, the Court categorically rejects Roggio's privilege-based arguments.

    Roggio's alternate argument for a new trial, the alleged misalignment of West Belt, also lacks merit. Roggio filed the amended complaint that forms his operative pleading in this case on May 22, 2009. (Doc. No. 139) In the caption and body of that amended complaint, Roggio expressly names West Belt as a defendant. (*Id.*) Count IV of that amended complaint is captioned as follows: **(Repayment of Loan Against West Belt)**. (*Id.*) Count VI of that amended complaint is captioned as follows: **(Derivative Claim For Conversion and**

**Misappropriation of Funds Against Anthony Emmanouil, Eugenia Emmanouil and West Belt)**.  (*Id.*)  Therefore, Roggio's operative pleading in this case not only expressly names West Belt as a defendant, but also lodges two discreet causes of action against West Belt.  Furthermore, in the years of contentious litigation since Roggio filed his amended complaint, Roggio has actively pursued his claims against West Belt via dispositive motion practice, pre-trial proceedings, and of course, a two-week trial.  As such, Roggio's present post-trial argument that a new trial is necessary because West Belt was misaligned is defeated by Roggio's own affirmative pleadings and subsequent litigation tactics.

Finally, the Court turns to Roggio's argument in favor of a stay of judgment execution pursuant to Fed. R. Civ. P. 62.  It appears that Roggio's request for a stay of execution of the Court's September 30 judgment is based upon Roggio's argument that West Belt was misaligned.  That argument has no merit.  As such, for at least that reason, Roggio's request for a stay of execution of the Court's judgment will be denied.

Thus, in sum, Roggio's post-trial motion will be denied in its entirety.  (Doc. No. 302)

**B.  The Emmanouils' Motion**

In support of their motion for attorney's fees and costs, the Emmanouils assert that the mortgage note (the "Note") between Anthony Emmanouil and Roggio contains the following clause:

> **Default.**  If I [Roggio] fail to make any payment required by this Note within 30 days after its due date, or if I fail to keep any other promise I make in this Note or in the Mortgage, the Lender [Anthony Emmanouil] may declare that I am in default on the Mortgage and this Note.  Upon default, I must immediately pay the full amount of all unpaid principal, interest, other amounts due on the Mortgage and this Note and the Lender's costs of collection

    and reasonable attorney fees.

(Mortgage Note: Doc. No. 278-3).  In light of this "default" clause, the Emmanouils argue that they are entitled to seek reimbursement from Roggio for $415,433.44 of attorney's fees and costs they incurred in connection with this litigation, based generally upon the theory that the Emmanouils' allegation that Roggio defaulted on the Note has been an essential cornerstone of this case since its inception.  In response, Roggio does not appear to contest that the "default" clause in the Note allows the Emmanouils to collect "costs of collection and reasonable attorney's fees", but rather, that the amount of the Emmanouils' recoverable costs under the "default" clause are minimal.  The Court disagrees, and concludes that the Emmanouils can recover their requested attorney's fees and costs pursuant to the "default" clause in the Note.

  In opposition to the Emmanouils' attorney's fees and costs request, Roggio asserts that "a law suit to collect monies allegedly due and owing on a promissory note is essentially routine and the time and effort can be reasonably calculated."  The Court agrees.  Indeed, the jury had no apparent difficulty concluding that the Emmanouils proved by a preponderance of the evidence that Roggio: (1) breached the $850,000 mortgage note with Anthony Emmanouil; and (2) was unjustly enriched as a result of wrongfully retaining the Emmanouils' money.  As the Court has already noted, the jury's foregoing conclusions were supported by a preponderance of the evidence.

  Therefore, the fatal flaw in Roggio's contention is not its substance, but rather its total inapplicability to  this case – at no point during its five-year continuum has this litigation been routine.  A cursory review of the '06 Case's 36-page, 320 (plus) entry docket report makes clear that nearly every aspect of this case was litigated to its bitter-end, and frequently beyond.   That

unfortunate trend continues to this day. As a result, the parties' perhaps once-narrow dispute has long-since morphed into complex and costly litigation. Throughout that metamorphosis, however, it has at all times remained apparent to the Court that the Emmanouils' fundamental effort to collect $850,000 from Roggio under the Note has inexorably permeated the entirety of this litigation. As such, the Court concludes that any attempt to segregate what little of the total requested amount that is not related to the collection of the sums due under the Note, if any at all, is not only impracticable, it is impossible.

     Ultimately, the Court decides that both the plain language of the "default" clause in the Note, and essential equity, mandate the Emmanouils' present motion for attorney's fees and costs is granted. In light of that conclusion, the Court has reviewed the documentation submitted by the Emmanouils' counsel in support of their requested award of $415,433.44. Having done so, the Court concludes that Emmanouils' foregoing request is both reasonable in light of the duration and contentiousness of this litigation, and sufficiently documented. As such, the Court will grant the Emmanouils' motion for an award of attorney's fees and costs in the amount of $415,433.44.

     Finally, the Emmanouils seek prejudgment interest in the amount of $307,374.56, and argue that under New Jersey law, such an award is appropriate in this case because the jury found Roggio liable for breach of fiduciary duty, a tort theory. Roggio opposes the Emmanouils' prejudgment interest request, and essentially makes two arguments: (1) that the Court should apply Texas state law to this issue, and thereunder, breach of fiduciary duty is not a tort; and (2) because the jury found Roggio liable under both contract and tort theories, an award of prejudgment interest is "intolerably incalculable". Roggio's foregoing arguments fail, and the

Court will award the Emmanouils prejudgment interest.

First, Roggio's argument regarding Texas state law is entirely without merit. This litigation is more than five years old, and at no point has Texas state law been applied. Roggio's suggestion that the Court apply it now, in the context of a single issue presented in a post-trial motion following a jury verdict decided under New Jersey law, borders on frivolity.

Roggio's second argument, that prejudgment interest is "intolerably incalculable", displays a misapprehension of the relevant law and is not persuasive. The New Jersey Court Rules expressly allow for prejudgment interest in tort actions. N.J. Court Rules, R. 4:42-11(b) (2011). Under New Jersey law, breach of fiduciary duty is a tort theory of liability, and therefore falls under the aegis of R. 4:42-11(b). *In re Estate of Lash*, 169 N.J. 20 (2001). Moreover, under New Jersey law, "it is settled that prejudgment interest may be awarded on contract claims." *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 N.J. 464, 478 (1988) (citations omitted). Where appropriate, prejudgment interest on contract claims may be awarded at the Court's discretion based upon equitable principles. *Id.* To that end, in New Jersey, "the equitable purpose of prejudgment interest is to compensate a party for lost earnings on a sum of money to which it was entitled, but which has been retained by another." *Sulcov v. 2100 Linwood Owners*, 303 N.J. Super 13, 34 (App. Div. 1997) (citations omitted).

In this case, the jury found Roggio liable to the Emmanouils on both tort and contract theories, and awarded $1,222,311 in compensatory damages. (Verdict Sheet: Doc. No. 274) Therefore, under New Jersey law, the Court may award the Emmanouils prejudgment interest on the entirety of the jury's compensatory damage award pursuant to both Court Rule and the common law. In its discretion, the Court shall do so. The jury concluded that Roggio wrongly

withheld $1,222,311 of the Emmanouils' money.  Equity demands that Roggio reimburse the Emmanouils for the earnings they lost as a result.  The Court concludes that the Emmanouils' prejudgment interest request of $307,374.56 is reasonable and appropriate.  As such, the Court will grant the Emmanouils prejudgment interest in the amount of $307,374.56.

In sum, the Emmanouils' motion will be granted in its entirety.  (Doc. No. 278)

### C.  The '11 Case

On October 13, 2010, Roggio filed the '11 Complaint against Anthony Z. Emmanouil and West Belt Auto Supply, Inc. in the Southern District of Texas, Houston Division.  (11-1171: Doc. No. 1).  The '11 Complaint seeks: (1) a declaratory judgment that Roggio owns 90% of West Belt's assets based upon the October 22, 2002 contract between Roggio and Anthony Emmanouil; and (2) a preliminary injunction.  (*Id.*)  On February 17, 2011, the Hon. Nancy F. Atlas, U.S.D.J., transferred the '11 Case to this Court, and on March 2, 2011, the Clerk of the Court opened Civ. No. 11-1171 (GEB).  (11-1171: Docs. No. 29, 30)  Subsequently, on March 14, 2011, Roggio's counsel submitted a letter to the Court and therein argues, among other things, that the Court should consolidate the '11 Case, and implicitly the '11 Complaint, into the '06 Case.  (Doc. No. 321)  On March 31, 2011, the Emmanouils' filed a motion to dismiss the '11 Complaint.  (Doc. No. 32)

Having reviewed the '11 Complaint, the Court concludes that it need not address the Emmanouils' recently filed motion, because the '11 Case is barred by the doctrine of *res judicata*, and will be dismissed with prejudice *sua sponte*.  *Res Judicata* refers to the common law doctrine barring re-litigation of claims or issues that have already been adjudicated. *Velasquez v. Franz*, 123 N.J. 498, 505 (1991).  According to the doctrine of *res judicata*, a cause

of action between two parties that has been finally determined on the merits by a tribunal having jurisdiction cannot be re-litigated by those parties or their privies in a new proceeding. *Roberts v. Goldner*, 79 N.J. 82, 85 (1979). The three basic elements that lead to a claim being barred by *res judicata* are: (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must arise out of the same transaction or occurrence as the claim in the earlier one. *Murray v. Crystex Composites LLC*, 618 F.Supp. 2d 352, 357 (D.N.J. 2009); *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981).

      All three elements necessary for *res judicata* to bar the '11 Case are indisputably apparent on the face of the '11 Complaint. First, the Court's September 30, 2010 judgment in the '06 Case is valid, final, and on the merits of the parties' claims. (Doc. No. 293) Among the claims litigated in the '06 Case were causes of action specifically based upon the October 22, 2002 contract that forms the basis of the '11 Complaint. Indeed, on September 3, 2010, after a two-week trial, the jury expressly found that Roggio breached the October 22, 2002 contract for sale of West Belt with Anthony Emmanouil, and in light of that and other findings, awarded $1,222,311 in compensatory damages to the Emmanouils. (Jury Verdict Sheet: Doc. No. 274) Second, the parties in the '11 Case are identical to the parties in the '06 Case. Third, and finally, the claim in the '11 Complaint arises on its face out of the same transaction or occurrence that was litigated for nearly half a decade before the jury's verdict in the '06 Case.

      Thus, in sum, on September 3, 2010, the jury squarely addressed the contract between Anthony Emmanouil and Roggio for sale the of West Belt, and decided that Roggio breached that contract, while Anthony Emmanoul did not. The issue presented by the '11 Complaint,

therefore, has been decided by a jury, and any additional litigation on this point is unnecessary and must be disallowed. As such, the '11 Complaint will be dismissed with prejudice pursuant to the doctrine of *res judicata*, and the Court will order the Clerk of the Court to close the '11 Case. (11-1171: Doc. No. 1)

### III. CONCLUSION

For the foregoing reasons, Roggio's post-trial motion will be DENIED. (Doc. No. 302) The Emmanouil's motion for attorney's fees and costs, as well as prejudgment interest will be GRANTED, and the Court will order the Emmanouils to submit a revised form of judgment consistent with the Court's present decision. (Doc. No. 278) The '11 Complaint will be DISMISSED WITH PREJUDICE. (11-1171: Doc. No. 1) In light of these decisions, the Court will order the Clerk of the Court to CLOSE both the '06 Case and the '11 Case. (Civ. No. 06-1068: Civ. No. 11-1171) An appropriate form of order accompanies this memorandum opinion.

Dated: April 4, 2011

                                                     /s/ Garrett E. Brown, Jr.
                                                  GARRETT E. BROWN, JR., U.S.D.J.